IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

*v.*

LARRY EDWARD FOXWORTH

Criminal Action No.
1:22-cr-176-MHC-JKL

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned counsel, respectfully submits this Sentencing Memorandum. The defendant, Larry Edward Foxworth, comes before the court for sentencing pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). In accordance with the agreement, the defendant has entered a plea of guilty to Counts 1 and 2 of a four-count Indictment charging the defendant with two counts of violating of 18 U.S.C. 249(a)(1) and two counts of violating 18 U.S.C. § 924(c). The agreement provides for a sentence of between 240 and 300 months of imprisonment. At the Change of Plea hearing on December 16th, 2022, this Court held its acceptance of the plea agreement in abeyance pending completion of the Presentence Investigation Report and the parties' submissions as to their position on the appropriate sentence. The parties have each reserved the right to make recommendations to the Court as to the specific sentence to be imposed within the negotiated range.

The United States requests the Court approve the plea agreement and sentence Defendant Foxworth in accordance with its terms. The United States submits that a sentence of between 288 and 300 months of imprisonment is the most appropriate penalty. Such a sentence – which is within the guideline range that would result from a one-point reduction in the defendant's criminal history score – would be factually and legally appropriate, adequately punishing the defendant for odious acts of racially-motivated attempted murder while also accounting for his prompt and overt acceptance of full responsibility for his crimes.

1

## I.     Background

On July 20, 2021, officers of the Clayton County Police Department responded to a 911 call reporting numerous shots fired at a gas station in Jonesboro, Georgia. Upon arrival at the station, officers found bullet damage to the walls and windows of the on-premises convenience store, and to one of the gas pumps. While they were searching for projectiles, the officers heard several more shots ring out from the direction of a second gas station located on the opposite side of a nearby intersection. Racing to that scene, they were informed by a witness that the shots had been fired from a car that had then driven off down the road. Observing the defendant's car driving away in the direction indicated by the witness, an officer initiated a traffic stop. When the defendant pulled over, officers observed ammunition and pistol magazines in plain view inside the passenger compartment. While being detained at the scene, the defendant made several spontaneous admissions to the effect that he had fired at the gas stations because he believed that African-Americans and persons of Arab descent – to whom he referred to exclusively by racial slurs – were inside the convenience stores located on the gas stations' premises. He repeatedly told the officers that he had intended and hoped to kill such people.

As a result of the shootings, the cashier of one of the targeted convenience stores quit her job out of fear of returning to the place where she had narrowly escaped being killed. She suffered from extreme anxiety for several months after the incident. The affected businesses also incurred substantial expense in repairing the damage caused.

## II.     Sentencing Considerations

In imposing an appropriate sentence in this case, the court is called upon to consider both the Sentencing Guidelines and the statutory sentencing factors enumerated in 18 U.S.C. § 3553. Notwithstanding the inclusion of a negotiated binding sentence in the agreement, the court must first determine the guideline range under the United States Sentencing Guidelines.

*Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018) ("In deciding whether to accept an agreement that includes a specific sentence, the district court must consider the Sentencing Guidelines. The court may not accept the agreement unless the court is satisfied that '(1) the agreed sentence is within the applicable guideline range; or (2), (A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity.'" (quoting U.S.S.G. § 6B1.2)). If the Court decides to accept the Agreement, the § 3553 factors may instruct its decision as to the specific sentence to impose within the negotiated range.

### a.  The Guideline Sentence

In this case, the government believes that the Probation Office correctly determined the adjusted offense level for Count 1 to be 33, the defendant's criminal history category to be IV, and the total guideline range to be 308-355 months.

### 1.  Adjusted Offense Level

### A.  Base Offense Level

As the Probation Office correctly determined in the Presentence Investigation Report, the Adjusted Offense Level as to Count I is 33. The guideline applicable to federal hate crime convictions under 18 U.S.C. § 249(a) provides that the base offense level is "the offense level from the offense guideline applicable to any underlying offense." U.S.S.G. § 2H1.1(a)(1). The Probation Office further correctly identified the underlying offense as Attempted First Degree Murder, and applied U.S.S.G. § 2A2.1(a)(1)'s Base Offense Level of 33.

### B.  Upward Adjustment for Hate Crime Motive

The Probation Office correctly applied a three-point upward adjustment for selection of victim on the basis of actual or perceived race, pursuant to U.S.S.G. § 3A1.1(a).

§ 3A1.1(a) is an atypical provision of the Sentencing Guidelines in that it requires that a court imposing sentence pursuant to a plea agreement make a specific factual finding to the heightened standard of beyond a reasonable doubt. U.S.S.G. § 3A1.1(a). Specifically, § 3A1.1 requires that the sentencing court find that "the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person." *Id.*

In this case, a sufficient basis exists for the court to make this finding, and the government requests that it do so. Pursuant to his written plea agreement with the government, the defendant acknowledged and affirmed that he is in fact guilty of the offense charged in Count 1 of the indictment, which alleges that willfully attempted to cause bodily injury to customers, employees, and other people present at a convenience store located at or near 6566 Tara Boulevard in Jonesboro, Georgia, *because of the actual and perceived race, color, and national origin of any person*. Furthermore, at the change of plea hearing on December 16, 2022, the government proffered a factual basis for the defendant's plea of guilty that included the facts that, with the intent to kill persons he knew to be present on the premises, the defendant discharged numerous rounds of ammunition from a handgun through the windows and doors of two convenience stores *because he believed that people associated with stores were Arab and African-American*. The defendant subsequently acknowledged, under oath, that the government's proffered factual basis for his plea of guilty was true and correct. Accordingly, the government submits that sufficient evidence exists for this Court to find, beyond a reasonable doubt, that the defendant intentionally selected victims and property as the object of the offense of conviction on Count 1 of the Indictment because of the actual or perceived race, color, and, national origin, of any person, and to apply the three-level upward adjustment provided for by U.S.S.G. § 3A1.1(a).

### C. Downward Adjustment for Acceptance of Responsibility

The government agrees with the Probation Office that the defendant has demonstrated acceptance of responsibility by entering a guilty plea, entitling him to a two-level downward adjustment pursuant to U.S.S.G. § 3E1.1(a). Additionally, the government hereby moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b), on the basis that the defendant timely notified authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. Accordingly, the government submits that the defendant's offense level should be adjusted downward by a total of three levels for acceptance of responsibility.

### 2. Criminal History Category

The government agrees with the Probation Office that the defendant's Criminal History Category under the Sentencing Guidelines is IV.

The defendant, while conceding that his criminal history category was calculated correctly, contends that Category IV overrepresents the seriousness of his criminal history when viewed as a whole and when compared to other Category IV offenders. U.S.S.G. § 4A1.3(b)(1) permits a downward departure "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(4)(A) directs that the extent of a departure under § 4A1.3(b) should be determined by applying the criminal history category that would be applicable to the defendant but for the over-representation giving rise to grounds for the departure.

Defendant argues that his criminal history category is over-representative on two grounds. First, he notes that had he successfully completed the five years of probation to which he was

originally sentenced after pleading guilty to Aggravated Battery in Florida in 2009, he would have received no criminal history points from this conviction, and would have landed in Criminal History Category III as opposed to Category IV. Second, he notes that many of his criminal history points come from misdemeanor convictions arising out of domestic and family disputes.

The government does not agree that these specific circumstances constitute the kind of substantial over-representation contemplated by § 4A1.3(b)(1). The defendant's criminal history score reflects a straightforward application of the guideline provisions to his criminal history. Nothing in the Guidelines suggests that the Sentencing Commission did not intend criminal history points to be added for sentences of imprisonment imposed upon the revocation of probation, or that it considered misdemeanor crimes arising from domestic and family disputes to be treated as less serious than other recent misdemeanors. To the contrary, the Eleventh Circuit has made clear that § 4A1.3 "is concerned with the pattern or timing of prior convictions, and not with the facts of the individual prior crimes. *United States v. Smith*, 289 F.3d 696, 713 (11th Cir. 2002).

Accordingly, for purposes of calculating the guideline range in this matter, the government opposes granting a downward departure under § 4A1.3(b)(1), and requests that the court determine that the total applicable guideline range is 308 to 355 months, as correctly calculated by the Probation Office.

### III.    18 U.S.C. § 3553

The federal sentencing statute, 18 U.S.C. § 3553, provides that, in addition to the Guidelines, a sentencing court should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, and; (2) the need for the sentence imposed– (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. With these factors in mind, the court should fashion a sentence that is sufficient, but not greater than necessary, to carry them out. *Id.* Because the Sentencing Guidelines are advisory in nature, a court may vary from the applicable guideline sentence in order to impose a sentence that complies with the directives of § 3553. *United States v. Booker*, 543 U.S. 220 (2005).

Mr. Foxworth twice emptied a pistol through the windows of buildings he knew to be occupied. He did so because he had decided to indiscriminately murder strangers for no reason other than their race and national origin. He fired round after round through the lighted windows of the open stores, believing and hoping that the shots would hit and kill Black and Arab customers and employees.  After being arrested, he launched into an obscene, slur-laden tirade in which he crowed about having struck a blow for white supremacy. "These sand n****rs, they got what they've got coming," he boasted, taunting officers that he would "do ten years and get out." With palpable excitement in his voice, he demanded that officers tell him whether he had killed anyone. When they refused, he snarled: "I hope I hit them, and I hope they die."

That this crime did not become yet another notorious massacre is no credit to the defendant. He tried, sincerely, to perpetrate murder on a mass scale. Nothing but sheer luck stopped his shots from finding their intended targets.

As to the defendant's history, he has a long record of convictions for assaultive crimes, though none rising to this level of homicidal violence. He is unquestionably a brutal and dangerous person, equally capable of hurting those close to him as he is of killing strangers. The need for a lengthy period of incapacitation is great.

The need to deter similar conduct needs no elucidation, and the defendant's correctional needs appear to be limited to treatment for alcoholism. In sum, the statutory sentencing factors

militate uniformly in favor of a severe penalty including a long sentence of incarceration. The plea agreement calls for such a sentence, and by accepting it, this Court may impose one.

## IV.    Argument

### a.  A justifiable reason exists to accept the Agreement and sentence the defendant within the agreed-upon range

The Plea Agreement in this case includes a binding joint recommendation that the defendant be sentenced to between 240 and 300 months of imprisonment. Although the entirety of this range falls below the low end of the applicable guideline range, the government believes that a sentence at the high end of the agreed-upon range – between 288 and 300 months – is appropriate, because it would represent only a minor variance from a Guideline sentence, and such variance is justifiable in light of the defendant's early acceptance of responsibility.

As discussed above, the applicable Guideline sentence is 308 to 355 months, resulting from a final adjusted offense level of 33 and a Criminal History Category of IV. The government notes that the defendant's criminal history category resulted from a criminal history score of 7, a single point over the threshold for inclusion in Category III, which would dictate a corresponding total guideline sentence of 288 to 330 months. An identical guideline sentence would have resulted from an additional one-level downward adjustment to the offense level.

This minor variance is justified by the defendant's acceptance of responsibility well in advance of the timeframe required to obtain a three-point reduction under the Guidelines. The Guidelines provide that a defendant who gives notice of his intention to plead guilty in time for the government to avoid preparing for trial is entitled to a three-point downward adjustment upon motion of the government. U.S.S.G. § 3E1.1. In this case, the defendant gave notice of his intention to plead guilty substantially in advance of the point at which the government would have had to begin preparing for trial. Viewed in light of all the circumstances of this case and combined with

the absence of any indication that the defendant attempted to conceal his wrongdoing from authorities, the government submits that an additional benefit equivalent to a one-level or one-point reduction is justified.

### b. 288-300 months of imprisonment is the most appropriate sentence

Notwithstanding his early acceptance of responsibility and his professed remorse, the defendant's conduct was undeniably horrific, his crimes caused serious harm, and his criminal history is substantial. Given his demonstrated capacity to perpetrate extreme acts of both random and personal violence, the government believes the defendant presents an ongoing danger to the community, and that a sentence at the high end of the agreed range better accounts for the need to incapacitate him for an extended period of time. Accordingly, the government requests that the court impose a sentence at the high end of the agreed-upon range.

A sentence of 288 to 300 months would fall within both the plea agreement's terms and the guideline range that would result from a justifiable one-level or one-point reduction. The government therefore believes between 288 and 300 months is the most appropriate sentence possible under the agreement.

Respectfully submitted this 9th day of March, 2023.

RYAN A. BUCHANAN
United States Attorney

By:     */s/ Brent Alan Gray*

BRENT ALAN GRAY
Assistant U.S. Attorney
Northern District of Georgia
75 Ted Turner Drive
Atlanta, GA 30303
Tel. (404) 581-6000
Ga. Bar No. 155089

KRISTEN M. CLARKE
ASSISTANT ATTORNEY GENERAL

By:     */s/ Alec C. Ward*
ALEC C. WARD
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
150 M. St. NE
Washington, DC 20002
Tel. (202) 532-3991
Alec.Ward@usdoj.gov
D.C. Bar No. 1781142

## Certificate of Service

I hereby certify that, on March 9th, 2023, the United States Department of Justice served this document by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

*/s/ Alec C. Ward*
ALEC C. WARD
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
150 M. St. NE
Washington, DC 20002
Tel. (202) 532-3991
Alec.Ward@usdoj.gov
D.C. Bar No. 1781142
